# Gordon *v.* The State.

*Indictment for Murder.*

1. *Homicide; admissibility of evidence; res gestae.*—On a trial under an indictment for murder, where the evidence shows that the killing occurred under a lighted shed of a furnace plant, and that the deceased was sitting under said shed talking to several persons, when the defendant walked up to where they were, and after the defendant had been there for some time, the altercation resulting in the homicide took place, the testimony of a witness who was present at the killing, that there

[Gordon v. The State.]

was light enough under the shed for the defendant, when he came up, to see deceased, is admissible; such testimony being in reference to the *res gestae* of the offense.

2. *Same; same.*—On a trial under an indictment for murder, where there was evidence tending to show that at the time of firing the fatal shot the defendant was retreating from deceased, the fact as to whether or not the defendant, when retreating, was walking in the direction of his home, is immaterial; and evidence to this effect is inadmissible.

3. *Same; same.*—In such a case, the fact that the defendant made inquiries of a witness before going to the furance where the killing occurred, as to whether or not the people at said furnace were bad, is immaterial and inadmissible.

4. *Same; same.*—On a trial under an indictment for murder, the fact as to whether or not one of the defendant's witnesses had been raised with him and had been his schoolmate, is immaterial and inadmissible.

5. *Same; same.*—On a trial under an indictment for murder, where it is shown that the deceased and the defendant had a difficulty some days prior to the homicide, it is not permissible to ask a witness who testified that he was present at such former difficulty, why he went to the place where the difficulty occurred and where the deceased was.

6. *Same; evidence of former difficulty.*—On a trial under an indictment for murder, where it is shown that some days prior to the homicide the defendant and the deceased had a diffculty, the defendant is not entitled to prove the particulars of such former difficulty.

7. *Homicide; improper question on direct examination.*—On a trial under an indictment for murder, where there is evidence introduced tending to show that at the time of the killing the deceased was drinking, a question asked a witness on direct examination, if, when the deceased was drinking, it is not true that he is a fussy and overbearing man, is a leading question and is properly disallowed.

8. *Evidence; proof of character.*—The character of a deceased in the neighborhood where he lives can not be proved by witnesses who did not know the deceased during his life time and whose opinions are formed from what they have heard about him, after his death.

9. *Witnesses; when conviction of offense not admissible as affecting credibility.*—The offense of throwing a stone or other missile into a railroad train, not being a common law felony and not having the elements of *crimen falsi*, the fact of a witness having been convicted of such offense can not be proved for the

purpose of affecting his credibility.

10. *Charge of court to jury; reasonable doubt.*—In the trial of a criminal case, a charge which instructs the jury that if they have "a reasonable doubt growing out of the entire evidence, or out of any part thereof, as to the defendant's guilt, then the jury can not convict," is erroneous and properly refused.

11. *Same; homicide.*—In the trial under an indictment for murder, charges as to justifiable homicide, which pretermit all reference as to the duty of retreat, are erroneous and properly refused.

12. *Argumentative charges* are properly refused.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. J. A. BILBRO.

The appellant in this case was indicted and tried for murder in the second degree, was convicted of murder in the second degree and sentenced to the penitentiary for ten years. The facts and circumstances under which the killing occurred are sufficiently stated in the opinion.

During the examination of one Walter Lawrence, a witness introduced for the State, and who testified that he was present at the furnace at the time the defendant shot and killed Dukes, the deceased, he was asked by the State the following question: "Was it light enough under the shed, for defendant, after he got under the shed to see Dukes before he came up to the heater?" The defendant objected to this question upon the ground that it called for illegal, irrelevant and immaterial evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that it was light enough, the defendant moved the court to exclude the answer upon the same grounds and duly excepted to the court's overruling his motion. Upon the cross-examination of this witness, the defendant asked him the following question: "In what direction was defendant retreating when he was walking back from Dukes, was he not walking in the direction of his home?" The State objected to this question, because it called for irrelevant and illegal evidence. The court sustained the objection, and the defendant duly excepted.

. During the examination of one Timberlake as a witness for the defendant, he testified that he knew the defendant and the deceased, Dukes, in his lifetime. That the defendant and Dukes had a difficulty about a week prior to the killing, and in this difficulty Dukes used some very rough language to the defendant. Thereupon the defendant asked the witness how this difficulty came about? The State objected to this question, the court sustained the objection, and the defendant duly excepted. The defendant then asked the witness the following question: "What did Dukes do during the difficulty?" Upon the State objecting to this question, the defendant then stated to the court that he expected to prove by this witness that the difficulty inquired about had occurred about a week before the killing; that Dukes, after abusing the defendant went away and shortly thereafter returned with two pieces of iron in his hand and asked for the defendant, who, in the meantime, had gone home. The court refused to allow the defendant to introduce this testimony, sustained the State's objection to the question, and to this ruling the defendant duly excepted. The defendant also excepted to the court sustaining the State's objection to the question asked said witness by the defendant, "what did Dukes have in his hands when he came back?" Similar questions as to said prior difficulty were asked several of the defendant's witnesses, to each of which questions separate objections were interposed, which were overruled, and to each of these rulings the defendant separately excepted.

H. W. White, a witness for the defendant, testified to having been present at the time there was a difficulty between Dukes and the defendant about a week before the killing. The defendant asked said witness the following question: "How came you to go up to where Dukes was?" intending to show by such question that the said witness went to where Dukes was at the time of said difficulty for the purpose of getting some cartridges which Dukes had taken from his store. The State objected to this question, upon the ground that it called for irrelevant and illegal testimony. The court

[Gordon v. The State.]

sustained the objection, and the defendant duly ex-
cepted.

Mrs. A. Gordon, the mother of the defendant, was in-
troduced as a witness in his behalf, and testified to a
difficulty which the deceased had had with the defend-
ant a short time before the killing, and that in said diffi-
culty the deceased drew his pistol and started towards
the defendant, whereupon the witness jumped between
them and prevented the shooting.  To this last testi-
mony the State objected, and moved the court to ex-
clude the same.  The court granted the motion, and the
defendant duly excepted.

Mack Hicks, a witness for the defendant, testified
that Mrs. Gordon, the mother of the defendant, told
him about the difficulty between the defendant and the
deceased, which occurred at Mrs. Gordon's store some
time before Dukes was killed, and in telling him about
such difficulty, she described the man, but did not know
at that time that it was the deceased, and that the wit-
ness did not know who the man was from the descrip-
tion; thereupon the defendant asked the witness the
following question:  "From the description she gave
you then, did you know who this man was?"  The State
objected to this question, and thereupon defendant sta-
ted that he expected to prove by said witness that from
the description given him, he afterwards found out that
the man referred to by Mrs. Gordon was Dukes, the de-
ceased.  The court sustained the defendant's objection
to the question, refused to allow the defendant to make
the proof as proposed, and to this ruling the defendant
duly excepted.

Upon the introduction of Will Moore, a witness for
the defendant, he testified that he knew Dukes in his
life time and had gone over from Rock Run Station to
the furnace with him.  The defendant then asked said
witness if, in going from the station to the furnace,
"Dukes made any inquiry about the folks about Rock
Run furnace, as to whether they were bad or not?"
The State objected to this question, the court sustained
the objection, and to this ruling the defendant duly ex-
cepted.

3

During the examination of Sam Carson and one Padgett, witnesses for the defendant, and after they had testified to the good character of the defendant for peace and quiet, they were each asked as to whether they knew of the character of the deceased in the neighborhood in which he lived, for peace and quiet, and upon each of the witnesses answering they did not know anything about the deceased's character before he was killed, but that since his death they had heard his character for peace and quiet discussed by his neighbors, and from what they had heard they would say that the deceased's character was bad, and that he was a dangerous, turbulent man, the State objected to this evidence and moved the court to exclude it. The court sustained the objection, granted the motion, and to this ruling the defendant duly excepted.

During the examination of John Smith, as a witness for the defendant, and after he had testified to having known the deceased, and that he was drunk on the night that he was killed, he was asked the following question: "When Dukes was drunk, is it not true that he was a fussy and overbearing man?" The State objected to this question, the court sustained the objection, and to this ruling the defendant duly excepted.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury have a reasonable doubt, growing out of the entire evidence, or out of any part thereof, as to the defendant's guilt, then the jury can not convict." (2.) "The jury may consider the age and size and character of the defendant, and the size and age and character of deceased in connection with all the other evidence in this case, in order to determine whether the defendant was impressed with a reasonable necessity, either apparent or actual, to shoot." (3.) "The law is a reasonable master, and has equal regard for every human life under its jurisdiction. It recognizes the love of life as a natural and legitimate sentiment; and while it cannot be moulded or controlled by notions of chivalry, it per-

mits every one, who is without fault, and who has adopted every reasonably safe expedient to avert the necessity, to take the life of his assailant, rather than to lose his own. The divine law does not require us to love our neighbor better than ourselves." (4.) "The court charges the jury that the law does not require the necessity for taking life, to be one arising out of actual and imminent danger, in order to excuse the slayer; but· he may act upon a belief, arising from appearance which gives him reasonable cause for it, that the danger is actual and imminent, although he may turn out to be mistaken. The guilt of the accused must depend upon the circumstances as they appear to him, and he will not be held responsible for a knowledge of the facts, unless his ignorance arises from fault or negligence on his part." (5.) "The court charges the jury that if they believe from the evidence that the defendant had a reasonable belief, generated by the attendant circumstances,—circumstances fairly creating it,—honestly entertained,—that it was necessary to take the life of the deceased, the defendant would be justified, and they should find the defendant not guilty." (6.) "The court charges the jury that if they find from the evidence that the deceased accosted defendant in an insulting, angry manner, and placed himself in a threatening attitude, the defendant was then authorized to anticipate him and fire first. And the rule would not be varied if it should turn out that the deceased was actually unarmed. The rule of self-defense, in such case is, that persons may and must act on the reasonable appearance of things; for the law of self-preservation would be very incomplete, if persons thus menaced were required to wait until the weapon was presented ready for deadly execution, and if the jury find from the evidence, that the defendant was free from fault in bringing on the difficulty, or in encouraging such difficulty, and that at the time of the shooting there was no reasonable mode of escape on the part of defendant without increasing the danger, then the jury cannot convict the defendant."

[Gordon v. The State.]

MATTHEWS & WHITESIDES, for appellant, cited *Nichols v. State,* 100 Ala. 25; *Roberts v. State,* 68 Ala. 156; *Clark v. State,* 78 Ala. 477; 3 Brick. Dig. 289, § 627; *Hurd v. State,* 94 Ala. 100; *Forney v. State,* 98 Ala. 21; *Walker v. State,* 117 Ala. 42; *DeArman v. State,* 71 Ala. 351.

MASSEY WILSON, Attorney-General, for the State. The witness Lawrence was properly permitted to testify that it was light enough under the shed where the homicide was committed for defendant to see Duke, at the time mentioned.—*Linnehan v. State,* 116 Ala. 471, 480; 12 Am. & Eng. Encyc. Law (2d ed.), 488.

It was immaterial whether defendant was retreating in the direction of his home when he shot Dukes.—*Dorsey v. State,* 107 Ala. 157.

The rulings of the trial court in refusing to bring out the details of the previous difficulty between the defendant and the deceased were free from error.—*Rutledge v. State,* 88 Ala. 85; *Stitt v. State,* 91 Ala. 10.

The court did not err in allowing the records of the conviction of the witness Tierce to be introduced in evidence.

If a conviction of manslaughter and of throwing stones in a railway train does not affect the credibility of a witness, the defendant's objection did not go to this. *Clifton v. State,* 73 Ala. 473; *Thompson v. State,* 100 Ala. 70; *McDaniel v. State,* 97 Ala. 14.

The charges requested by the defendant were properly refused.—*Winter v. State,* 133 Ala. 176; *Fountain v. State,* 98 Ala. 40; *Jackson v. State,* 94 Ala. 85.

SHARPE, J.—The defendant was convicted on an indictment charging him with murder in the second degree, committed by shooting Dukes. The killing was at night under a lighted shed of a furnace plant in the presence of several persons with whom the deceased was in company. When the defendant came near the group the deceased spoke to him about a difficulty which, a few days before, had occurred between them. After some altercation he applied to defendant an op-

probrious epithet and walked towards him when de-
fendant backed, drew a pistol and told him to stop.
This he failed to do and defendant shot him.   He con-
tinued to approach defendant, who again walked back-
ward and told him to stop, but he did not, and defend-
ant shot him a second time, whereupon deceased fell
and expired.   Defendant was about sixteen years old
and the deceased was older and larger than he, but had
no weapon.   There was evidence tending to show that
deceased when approaching defendant placed his hand
in his pocket; that he had previously had difficulties
with defendant and had thereafter made threats to kill
him, which threats were communicated to defendant.
The questions raised by the record relate to evidence
and requests for instructions to the jury.

The objections made to the question and answer of
the witness Lawrence as to whether it was light enough
under the shed for defendant, when he came up, to see
Dukes, were properly overruled.   The question was
about the *res gestae* of the offense, and the ground of
objections were not such as to require the trial court
to consider whether it called for an opinion as distin-
guished from a fact.   Whether defendant when retreat-
ing from Dukes was walking in the direction of home;
and what inquiries had been made by Dukes as to folks
about the furnace being bad; and whether one of the
defendant's witnesses had been raised with him and
been his schoolmate, were each immaterial matters.
The question asked White, "how came you to go up to
where Dukes was," was about matter likewise immate-
rial.   The question addressed to Hicks, "From the de-
scription she gave you then, do you now know who this
man was?" called for an answer based on hearsay, and
was properly disallowed for this, if for no other reason.

The defendant was not entitled to prove the partic-
ulars of the former difficulties.—*Harkness v. State,* 129
Ala. 71; *Rutledge v. State,* 88 Ala. 85; *Stitt v. State,* 91
Ala. 10.   This is said in justification of the court's ac-
tion in excluding the statement of Mrs. Gordon in
which she testified of having, on a former occasion, in-
terposed when Dukes threatened and started toward

defendant with a pistol, and in refusing to allow Timberlake to answer the question asked with reference to a former altercation, "What did Dukes do during the difficulty?" and in rejecting the several offers to prove that Dukes had on such an occasion armed himself with a piece of iron. Smith was asked, not on cross-examination: "When Dukes was.drinking, is it not true that he was a fussy and overbearing man?" The leading character of this question, if nothing else, was enough to justify its disallowance.

It appearing that all Carson and Padgett knew of Dukes' character came from what they heard after the killing, those witnesses were incompetent to testify as to that character; the rule being that testimony touching reputation founded on opinion expressed *post litem mortam* is inadmissible.—*Griffith v. State,* 90 Ala. 583; *Reid v. Reid,* 17 N. J. Eq. 101; *Douglass v. Tousey,* 2 Wend. 352; 1 Green. Ev. § 461.

As affecting the credibility of Tierce, whose testimony, in the form of a written statement, had been admitted in behalf of defendant, the State was allowed, against separate objections, to introduce in evidence a record showing that Tierce had been convicted and sentenced for manslaughter in the first degree, and also a record showing he had been convicted of what is termed in the bill of exceptions, "the offense of throwing stones in a railroad train." The first of these records was admissible. Manslaughter was a felony at common law, and by the common law a conviction and sentence for crime belonging to the class called infamous and comprised in treason, felony and *crimen falsi* rendered the convict incompetent to testify as a witness. Our statute on the subject is: "No objection must be allowed to the competency of a witness because of his conviction for any crime, except perjury or subornation of perjury, but if he has been convicted of other infamous crime, the objection goes to his credibility."—Code, § 1795. The object of the enactment was to alter the rule previously governing with respect to convictions for crime within certain classes, by allowing for such conviction a discrediting instead of a disqualifying effect,

[Tipton *et al.* v. The State.]

and was not intended to create a new rule extending to offenses never within the influence of the common law rule though amounting to statutory felony.—*Clifton v. State,* 73 Ala. 473; *Planters, etc. Co. v. Tunstall,* 72 Ala. 142. By statute a wanton or malicious throwing into a car of a railroad train is under some circumstances a felony, and under others a misdemeanor, but it is neither a common law felony nor an offense within the description *crimen falsi,* and would never have worked the disqualification of a witness.—*Clifton v. State, supra; Commonwealth v. Dame,* 8 Cush. 384. The conviction of Tierce for throwing stones, whether under the felony or misdemeanor statute, was not the proper subject of proof for the purpose of affecting his credibility or other purpose; and the admission of the record relating thereto was error for which the judgment must be reversed.

In the refusal of charges there was no error. Charge 1 was bad for reasons given in *Winter v. State,* 132 Ala. 32. Charges 2, 3 and 6 were each argumentative, and faulty in that respect, if in no other. Charges 4 and 5, each, improperly pretermitted all reference to the duty of retreat, which under the evidence was a proper subject for consideration.

Reversed and remanded.

*Indictment for Murder.*

