LEIGH M. CLARK, Retired Circuit Judge.
The indictment against defendant (appellant), except for the formal parts, is as follows:
“ . . Ellis Shelton, whose name is otherwise unknown to the Grand Jury, unlawfully and with malice aforethought, killed Bobby Charles James, by shooting him with a pistol. . . . ”
*452 The indictment was returned in September 1971, but soon thereafter defendant left the state of Alabama to remain away until he was brought back by extradition procedure a few months before his arraignment. No contention is made to the effect that he was denied his constitutional right to a speedy trial.
Appellant is represented by different counsel from counsel that represented him on the trial. On the trial, the indictment was treated, without challenge, as an indictment for murder in the first degree. Appellant now contends that it is an indictment for murder in the second degree and not murder in the first degree, in that it does not charge that the alleged homicide was committed deliberately and with premeditation. The indictment is in the form prescribed by Code of Alabama, Recomp. 1958, Tit. 15, § 259(79), which has been uniformly recognized as the appropriate form of indictment for murder in the first degree. Jones v. State, 21 Ala.App. 234, 109 So. 189 (1926). See also, King v. State, 49 Ala.App. 111, 269 So.2d 130 (1972) and Harvey v. State, Ala. Cr.App., 341 So.2d 187 (1977). In contrast, the Code form for murder in the second degree, as prescribed by Tit. 15, § 259(81), contains the language “but without premeditation or deliberation.” Although not applicable to indictments returned at the time the indictment in the instant case was returned, it is to be observed that no material change has been made in the pertinent forms prescribed by Code 1975, § 15-8-150(72), (73).
Appellant’s only other contention for a reversal is stated in appellant’s brief as involving “highly prejudicial questions asked the defendant on cross-examination by the District Attorney regarding details of two prior convictions of aggravated assault.” The brief quotes from defendant’s testimony on cross-examination as follows:
“Q. Now in ’65 you testified that you left Chicago and went to Indiana; is that correct? You left Chicago and went to Fort Wayne; is that correct?
“A. In ’65?
“Q. You went to Fort Wayne from Chicago?
“A. Somer where in there.
“Q. To visit your people or to move down there with you kin people?
“A. I moved to Fort Wayne, Indiana, at that time.
“Q. That was to see — ‘cause you kin people were down there; is that right?
“A. Right. I didn’t have any relatives in Chicago.
“Q. Is it also true that you moved there because you were in trouble in Chicago?
“A. No, it’s not true.
“Q. You didn’t have any difficulties with the law in Chicago at that time?
“A. Well, I might have had some—
“MR. PIERCE: (Interposing) Your Hon- or, I am going to object to the form of the question.
“MR. GREEN: He asked what was the occasion to go from Chicago to Fort Payne, and that’s what I’m coming up to. He said to go visit some friends and I think I can show it was for—
“THE COURT: (Interposing) Overrule the objection.
“BY MR. GREEN: (Continuing)
“Q. You say that you might have had some trouble with the law?
“A. Right. I might have had some trouble with the law.
“Q. What kind of trouble with the law were you into, sir?
“A. Sir, I couldn’t count back that many years to ’65. I don’t what I did at that time. I might have — I don’t know what I had did at that time.
“Q. Did they have you on probation up there for aggravated assault and illegal use of a weapon at that time in Chicago in ’65?
“A. Well, they might have—
“MR. PIERCE: (Interposing) Your Hon- or, I object to the form of the District Attorney’s question.
“THE COURT: O.K. Overruled.
“BY MR. GREEN: (Continuing)
“Q. Isn’t that the reason you left Chicago and went to Fort Wayne?
“A. No, sir; that’s not the reason I left.
*453 “Q. While we are on that subject, now, sir, September of 1966, did you not enter a plea of guilty to the charge of aggravated battery and sentenced to two years probation?
“A. Right. I did that.
“Q. You did that?
“A. I did that.
“Q. Then in January 1977 were you not found guilty of aggravated battery and placed on again two years probation?
“A. I did that.
“Q. You did both of those?
“A. Right.
“Q. What is aggravated battery?
“MR. PIERCE: I object, Your Honor. He’s calling for him to define what a law is from another state.
“THE COURT: I’ll sustain that objection.
“BY MR. GREEN: (Continuing)
“A. What did I do in — which case are you talking about?
“Q. The 1966 case. Let’s start with that one.
“A. 1966. Well, I—
“MR. PIERCE: (Interposing) I would renew my objection. I don’t believe the District Attorney has the right to go into the details of the conviction.
“THE COURT: Overruled.
“MR. PIERCE: You have to answer the question.
“BY MR. GREEN: (Continuing)
“A. Now, what did you ask me, sir?
“Q. 1966.
“A. 1966.
“Q. On the'battery.
“A. On the battery what did I do? You are asking me what did I do, right?
“Q. Yes, sir.
“A. Well, I had shot somebody.
“Q. Same pistol you had down here?
“A. No, I don’t think it was. I couldn’t say. I don’t know. No, it wasn’t.
“Q. It was a different pistol?
“A. It was a different pistol.
“Q. What about in ’77?
“A. In ’77 I got two years for aggravated battery.
“Q. What was that, please, sir?
“A. What was it for?
“Q. Yes, sir.
“A. Fighting.
“Q. Fighting? Any kind of weapon used in that case?
“A. It was a knife involved in the case.
“Q. You had a knife?
“A. I had a knife; everybody else had a knife.
“Q. Everybody had a knife?
“A. Right.
“Q. Is that how you got the scar on your face?
“A. Right.
“Q. From that ’77 fight?
“A. I got the scar right here from that. (Indicating)
“Q. From the ’77 fight?
“A. From the ’77 fight.”
To state that the question now presented is to be resolved by a determination whether the particulars of a crime involving moral turpitude for which a witness has been convicted may be shown as affecting his credibility is to oversimplify the question now before us. As appellant contends, the particulars are not generally admissible over an appropriate objection. Waters v. State, 117 Ala. 108, 22 So. 490 (1898); Latikos v. State, 17 Ala.App. 655, 88 So. 47 (1921); Ellis v. State, 244 Ala. 79, 11 So.2d 861 (1943); Conley v. State, Ala. Cr. App., 354 So.2d 1172 (1977).
In the recital in appellant’s brief of the State’s cross-examination of defendant as quoted above, much more is to be found than that which pertains to the question whether it constituted evidence affecting the credibility of defendant as a witness by reason of his having been convicted of a crime involving moral turpitude. Much of such testimony should be reviewed against the background of testimony of defendant during direct examination of him, which was in part:
“Q. Where have you lived during you life time?
“A. I have lived in Chicago. I lived in Ft. Wayne, Indiana.
*454 “Q. When did you first move away from Brent?
“A. I left Brent in 1962.
“Q. 1962?
“A. The last part of 1962. December 27.
“Q. Where did you move to after that time?
“A. I moved to Chicago.
“Q. How long did you live there?
“A. I lived in Chicago up to 1965.
“Q. And where did you move then?
“A. I went to Ft. Wayne, Indiana, to live.
“Q. What was the occasion for your moving from Chicago to Ft. Wayne?
“A. Well, I had relatives there. I didn’t have any relatives in Chicago.
“Q. You had relatives in Ft. Wayne?
“A. All my uncles are there.
“Q. Did you move back to Brent any time in there?
“A. I didn’t move back to Brent. I came back to visit.”
It is to be readily seen, when this considered with quoted parts of the State’s cross-examination of the witness prior to the overruling by the court of two objections made by defendant’s counsel, that State’s counsel was properly endeavoring to show that instead of defendant’s moving from Chicago to Ft. Wayne being by reason of his having no relatives in Chicago but having relatives in Ft. Wayne, as he claimed in his direct testimony, it was by reason of his “difficulties with the law in Chicago” that he moved to Indiana, which was clearly within the range of proper cross-examination, as to which there was no objection, except “to the form of the question.” The record does not show to which particular questions the objection was made, and our attention is not called to any defect in the form of either of the questions asked before each of the objections made as to the form of the question. There was no error in overruling either of said objections.
As to the last objection, wherein counsel for defendant stated, “I don’t believe the District Attorney has the right to go into the details of the conviction,’.’ it is to be observed that the last question asked by counsel for the State was, “what is aggravated battery,” and the court sustained the objection to that question. Whatsoever there may be in the remainder of defendant’s testimony on cross-examination as quoted above that may have constituted particulars of previous crimes that should not be admitted in evidence after appropriate objection thereto has been made, the last objection made by defendant was not directed to any specific question or evidence. Whatever question was asked by counsel for the State that appellant may have conceived to be the question objected to, such question was not the first question asked after the overruling of the objection. Different questions were thereafter asked to which no objections were made. The failure to object to such questions constituted a waiver of the right to claim that the answers thereto constituted inadmissible testimony. State v. Garris, 292 Ala. 495, 296 So.2d 712 (1974).
In addition, we are of the opinion that under the circumstances of this particular case, there was no violation of the general rule that the details or particulars of a crime involving moral turpitude committed by a witness are not admissible as affecting his credibility. The particular crimes were referred to as “aggravated assault” or “aggravated battery.” The crime of assault and battery does not involve moral turpitude. Bedsole v. State, 274 Ala. 603, 150 So.2d 696 (1963). Assault with intent to murder does involve moral turpitude. Roden v. State, 5 Ala.App. 247, 59 So. 751 (1912). Although defendant did not press the trial court for a ruling whether “aggravated assault” or “aggravated battery” under the law of Indiana or under the law of Illinois constituted a crime involving moral turpitude under the law of Alabama, it is obvious that the determination of such question might be more difficult than if almost any other crime were the subject of consideration. Defendant’s attorney correctly observed this promptly after the State had rested its case and before defend *455 ant proceeded with his evidence, as shown by the following portion of the record:
“MR. PIERCE: We are outside the presence of the jury and I am making a motion, Your Honor, to _ _ the District Attorney has, I guess what is commonly called a rap sheet, which shows prior convictions and charges against my client. And I would make a motion that the court examine that sheet and make a ruling as to which convictions he will allow the District Attorney to use for purposes of impeaching my client.'
“THE COURT: Let me take a look at that sheet. (Whereupon an off-the-record discussion was held between counsel and the court).
“MR. GREEN: your Honor, if we might go back on the record and let me reply to his motion. Of course, the law as I understand it requires when a person is being impeached on prior convictions, it has to be a crime involving moral turpitude. ... I don’t know exactly how the Court can read that sheet and make any rulings. The only thing I thing might be pertinent would be the discussion between us beforehand off the record with reference to aggravated assault as they have in many states. We don’t have such a law. Whether or not that is involving moral turpitude as our assault to murder statute or our assault and battery charges.
“(Whereupon an off-the-record discussion was held between counsel and the Court.)
“MR. GREEN: I don’t intend to go down this sheet and ask about everything. And before I ask about a specific one, we’ll let the Court rule on it at that time. Let’s leave it at that for now; I don’t know exactly how things will turn out.
“THE COURT: All right, then.
“MR. PIERCE: All right.”
We do not know, and we are not expected to know, what went on in the off-the-record conferences, but it seems that there was a rather loose agreement between the parties that whether an aggravated assault or an aggravated battery under the law of either Indiana or Illinois constituted a crime involving moral turpitude under the law of Alabama would be ruled upon by the court before the defendant was asked about such a conviction.
In defendant’s motion for a new trial, his only ground is to the effect that the court had erroneously allowed the District Attorney to ask about the details and circumstances of defendant’s prior convictions of aggravated assault. In the memorandum of his counsel in support of the motion for new trial, which is in the record now before us, there is this statement:
“The Court had earlier ruled, outside the hearing of the jury, that it would allow the prosecution to ask the Defendant about his two prior convictions for the offense of aggravated assault in Illinois and Indiana. This ruling was made on the basis that the offense of aggravated assault is a crime involving moral turpitude and a conviction thereof could be used for impeachment purposes.”
Appellee argues now on appeal that:
“The defendant was convicted in a foreign jurisdiction and in order to determine if his act involved moral turpitude it was necessary for him to divulge what he had done to merit a conviction for ‘aggravated battery.’ ”
Whether the parties on the trial, through their respective attorneys, were in accord in off-the-record discussions between them, or among them and the court, that the court had ruled or would rule that the crimes stated involved moral turpitude, we do not know, but it appears from what we have stated that the parties on appeal, through their respective counsel, are not now in accord on the point. We cannot be guided by anything that is not in the record or is not agreed upon by the parties on appeal. We think it would have been better if the court had proceeded, as requested or suggested by defendant’s counsel, to determine the question of moral turpitude vel non out of the presence and hearing of the jury and made a ruling thereon, as defendant in its brief on motion for new trial states that it did, before State’s counsel proceeded to cross-examine the defendant *456 as to either of the two crimes, which State’s counsel indicated he would not do prior to such a ruling of the court. The apparent misunderstanding is regrettable, but it is fortunate that it can be stated that irrespective thereof the trial court was not in error in any ruling by it as to the evidence relative to the two' other crimes committed by defendant.
No contention is made as to the sufficiency of the evidence to support the verdict finding defendant guilty of murder in the second degree. Notwithstanding strong evidence by defendant that he was acting in self-defense, there was substantial evidence to the contrary. We have searched for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.