Charles Johnson, the appellant, was convicted of three counts of assault in the second degree and was sentenced to three consecutive terms of 20 years' imprisonment. On this direct appeal from that conviction, he argues that he should have been permitted to impeach the credibility of a State witness by showing that the witness had a prior conviction for assault in the second degree. We agree, and we hold that the crime of assault in the second degree as defined by Ala. Code 1975, §13A-6-21, constitutes a crime involving "moral turpitude."
A witness may be impeached by showing that he has been convicted of a crime involving moral turpitude. Ala. Code 1975, § 12-21-162. The question in this case is whether assault in the second degree is a crime involving moral turpitude. Section13A-6-21, Ala. Code 1975, provides:
 "(a) A person commits the crime of assault in the second degree if:
 "(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person; or
 "(2) With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument; or
 "(3) He recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or
 "(4) For a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance or preparation capable of producing the intended harm.
 "(b) Assault in the second degree is a Class C felony."
Whether the offense defined in § 13A-6-21 is a crime of moral turpitude has not been decided in Alabama. In Nelson v. State,595 So.2d 506 (Ala.Cr.App. 1991), the trial court gave the following oral charge:
 "[T]he evidence in the case [is] that the defendant has a conviction, a prior felony conviction for assault in the second degree, and our law says that where a person has been convicted of an offense involving moral turpitude such as this, that there is no longer a presumption that when he takes the oath to tell the truth, the whole truth and nothing but the truth and takes the stand and testifies, that there is no longer a presumption that he is telling the truth. Ordinarily every witness who takes the stand when he swears to tell the truth and testifies, there is a legal presumption that he or she will testify truthfully. But when it has been shown that a witness has been convicted in the past of a crime involving moral turpitude, then that presumption of truthfulness no longer exists and is no longer binding on you."
Nelson, 595 So.2d at 508-09 (emphasis added).
Without discussing whether assault in the second degree is a crime of moral turpitude, this court found the foregoing charge erroneous on other grounds, but harmless. The Alabama Supreme Court disagreed that the instruction was harmless, but it did not address the question whether assault in the second degree is a crime of moral turpitude. Ex parte Nelson, 595 So.2d 510
(Ala. 1991).
Under the law existing prior to the adoption of the 1975 Criminal Code, simple assaults, and assaults and batteries were misdemeanors. See generally Chapter 12 of Title 14, Ala. Code 1940. Title 14, § 33, provided that
 "[a]ny person who commits an assault, or an assault and battery, on another, shall, on conviction, be fined not more than five hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months."
It is not surprising that assault and battery was classified as a misdemeanor, since the *Page 710 
pre-Criminal Code offense was based on the common law definition of assault and battery as " 'any touching by one person of the person of another in rudeness or in anger.' "Seigel v. Long, 169 Ala. 79, 82, 53 So. 753, 754 (1910) (emphasis added) (wherein the defendant placed his hand on the plaintiff's forehead and pushed the plaintiff's hat back). The least violation of the person of another was an assault and battery, see Murdock v. State, 65 Ala. 520, 522 (1880), so that the mere laying of hands on another in a hostile manner constituted a battery, though no damage followed, Singer SewingMach. Co. v. Methvin, 184 Ala. 554, 561, 63 So. 997, 1000
(1913).
The former offenses of assault and assault and battery were not crimes of moral turpitude. Hall v. State, 375 So.2d 536,538 (Ala.Cr.App. 1979). Accord People v. Thomas, 206 Cal.App.3d 689,694, 254 Cal.Rptr. 15, 18 (1988) ("neither simple assault, simple battery nor even felony battery are offenses involving moral turpitude. . . . Since the 'least touching' will suffice to constitute a battery, . . . a person need not have an intent to injure to commit a battery, but only the general intent to commit the act"); Polk v. State,202 Ga. App. 738, 415 S.E.2d 506, 507 (1992) (same).
It can reasonably be concluded that the prior offense of assault and battery was not considered a crime of moral turpitude because, under former law, the offense was a relatively minor misdemeanor, which (1) did not require either actual physical injury or intent to injure, (2) could "technically" be committed by a great many persons undeserving of severe sanction, and therefore (3) was unlikely to reflect negatively on a witness's credibility. In Gillman v. State,165 Ala. 135, 51 So. 722 (1910), the Alabama Supreme Court observed that
 "[a] mere assault and battery does not involve moral turpitude. Moral turpitude signifies an inherent quality of baseness, vileness, depravity. Assaults and batteries are frequently the result of transient ebullitions of passion, to which a high order of men are liable, and do not necessarily involve any inherent element of moral turpitude."
165 Ala. at 136, 51 So. at 723. Compare Thomas v. State,29 Md. App. 45, 349 A.2d 384, 389-90 (1975) (wherein the court, observing that "[t]here are some very truthful people who love to get in barroom fights," held that a conviction for assault and battery did not affect the credibility of a witness).
Under former Alabama law, the offense of assault with a dangerous weapon, which consisted of "drawing or threaten[ing] to use" the weapon, was also a misdemeanor, Title 14, § 36, Code of Alabama, 1940, and not crime of moral turpitude. Savagev. State, 380 So.2d 375, 379-80 (Ala.Cr.App. 1980). But comparePeople v. Cavazos, 172 Cal.App.3d 589, 595, 218 Cal.Rptr. 269,272-73 (1985) (witness may be impeached with prior conviction for assault with a deadly weapon; the use of the weapon elevates the assault to a turpitudinous crime).
Prior to the adoption of the Alabama Criminal Code, the only assault crimes punished as felonies were those "aggravated" assaults named in Title 14, § 38, Code of Alabama 1940:
 "Any person who commits an assault on another, with intent to murder, maim, rob, ravish, or commit the crime against nature, or who attempts to poison any human being, or to commit murder by any means not amounting to an assault, shall, on conviction, be punished by imprisonment in the penitentiary for not less than two nor more than twenty years."
The former offense of assault with intent to murder, a felony "aggravated assault" named in Title 14, § 38, supra, was
considered a crime of moral turpitude. Harris v. State,343 So.2d 567 (Ala.Cr.App. 1977); Matthews v. State, 51 Ala. App. 417,419, 286 So.2d 91 (1973). See C. Gamble, McElroy's AlabamaEvidence § 145.01(9)(c) and § 145.10(c) (4th ed. 1991).
The current felony assault offense defined in § 13A-6-21
requires both a more culpable mental state on the part of the perpetrator and a more serious injury to the victim than the prior misdemeanor offenses of simple assault or assault and battery required. Subsections (1), (2), and (4) of §13A-6-21(a) require intentional conduct on the part of the actor. A person violates subsection (1) if he *Page 711 
intends and causes "serious physical injury." He violates subsection (2) if he intends and causes "physical injury" by means of a deadly weapon or dangerous instrument. The actor violates subsection (4) if, "for a purpose other than lawful medical or therapeutic treatment," he intends and causes "stupor, unconsciousness, or other physical or mental impairment or injury" by administering "a drug, substance, or preparation."
Subsection (3) of the current offense requires only reckless conduct on the part of the actor. However, that mental state is substantially more culpable than the mental state required for the former offenses of simple assault, assault and battery, or even assault with a deadly weapon. "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur, or that the circumstance exists." Ala. Code 1975, § 13A-2-2(3). Thus, a person violates subsection (3) of §13A-6-21(a) if he is aware of a risk of serious physical injury, consciously disregards that risk, and causes serious physical injury by means of a deadly weapon or dangerous instrument.
It is obvious that the current offense of assault in the second degree is a much more culpable offense, in terms of the required mental state, the required result, and the required punishment, than the prior offenses of assault, assault and battery, or assault with a deadly weapon, all of which were misdemeanors and none of which were crimes of moral turpitude. The current offense of assault in the second degree more closely resembles the "aggravated assault" felonies defined in Title 14, § 38, at least one of which (assault with intent to murder) was a crime of moral turpitude.
If it is true that " '[t]he concept of moral turpitude depends upon the state of public morals, and may vary according to the community or the times,' " (In re Higbie, 6 Cal.3d 562,570, 99 Cal.Rptr. 865, 869, 493 P.2d 97, 101 (1972), quoted inPeople v. Castro, 38 Cal.3d 301, 334 n. 2, 211 Cal.Rptr. 719,741 n. 2, 696 P.2d 111, 133 n. 2 (1985) (Bird, C.J., concurring and dissenting)), then it is questionable whether a reasonable person in 1993 would assent to the statement made by the Alabama Supreme Court in 1910 that the crime of assault and battery is an offense "to which a high order of men are liable, and do[es] not necessarily involve any inherent element of moral turpitude." Gillman v. State, 165 Ala. at 136,51 So. at 723. Furthermore, no reasonable person could assent today to the statement that "a high order of men" are prone to the kind of assault described in § 13A-6-21.
In Shelton v. State, 371 So.2d 451 (Ala.Cr.App. 1979), this Court noted that it was not required to decide whether "aggravated assault" or "aggravated battery" were crimes of moral turpitude. 371 So.2d at 454. Supernumery Circuit Judge Leigh Clark, writing for this Court in Shelton observed: "[I]t is obvious that the determination of such question might be more difficult than if almost any other crime were the subject of consideration." Id. After having canvassed other jurisdictions for authority on the question whether assault in the second degree is a crime of moral turpitude, we must again acknowledge and approve the truth of Judge Clark's observation.
A search for authority on the question whether the offense defined in § 13A-6-21 is a crime of moral turpitude is hampered by the fact that very few states use the "moral turpitude" standard for determining whether a prior criminal conviction affects the credibility of a witness[1]; and, of the jurisdictions *Page 712 
that do employ the "moral turpitude" standard, none that we have found have a statutory scheme describing assault offenses similar to Alabama's. For example, while California, Georgia, and Vermont use the moral turpitude standard, see People v.Castro, 38 Cal.3d 301, 306, 211 Cal.Rptr. 719, 721,696 P.2d 111, 113 (1985); Tilley v. Page, 181 Ga. App. 98,351 S.E.2d 464, 466 (1986); State v. Gardner, 139 Vt. 456, 433 A.2d 249,251 (1981), none of those states defines assault offenses as does Alabama. On the other hand, while New York's assault offenses are virtually identical to Alabama's, that jurisdiction does not use the "moral turpitude" criterion.
Nevertheless, based upon the reasoning of decisions from California, Georgia, New York, and Vermont, and considering the fact that assault in the second degree as defined in § 13A-6-21
is a much more culpable offense than the prior assault offenses under Alabama law, we conclude that assault in the second degree is a crime of moral turpitude available to impeach a witness in Alabama.
In People v. Castro, 38 Cal.3d 301, 211 Cal.Rptr. 719,696 P.2d 111 (1985), the California Supreme Court held that a witness may be impeached by showing "any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty." Id. at 306, 211 Cal.Rptr. at 721, 696 P.2d at 113. The court noted that " 'convictions which are assaultive in nature do not weigh as heavily in the balance favoring admissibility as those convictions which are based on dishonesty or some other lack of integrity.' " Castro,38 Cal.3d at 315, 211 Cal.Rptr. at 727, 696 P.2d at 119. "Nevertheless, it is undeniable that a witness' moral depravity of any kind has some 'tendency in reason' (Evid. Code, § 210) to shake one's confidence in his honesty." Id.
In People v. Elwell, 206 Cal.App.3d 171, 177, 253 Cal.Rptr. 480,483 (1988), the California appellate court decided that the offense of "assault [defined as an attempted battery, much like assault under prior Alabama law] by means of force likely to produce great bodily injury" is a crime of moral turpitude. The court reasoned that the offense focused on the force used, and thus the intent of the actor, rather than the result caused. It observed that "the average person would believe that anyone who unlawfully attempts to injure another by means of force likely to produce great bodily injury is guilty of some degree of moral laxity." Elwell, 206 Cal.App.3d at 177, 253 Cal.Rptr. at 483 (emphasis added). Applying that reasoning to *Page 713 
the Alabama second degree assault statute, which requires intent to injure and actual injury, rather than mere attempted injury, leads to the conclusion that the crime described in §13A-6-21 also implies "some degree of moral laxity."
In Georgia, a simple (misdemeanor) assault is an attempt to commit a violent injury or an act that places another in reasonable apprehension of immediately receiving a violent injury. Ga. Code Ann. § 16-5-20 (1992). An aggravated (felony) assault is an assault committed with intent to murder, rape, or rob, or one committed with a deadly weapon or any object that is likely to result in, or which actually results in, serious bodily injury. Ga. Code Ann. § 16-5-21 (1992). In Polk v. State,202 Ga. App. 738, 415 S.E.2d 506, 507 (1992), the court, while assuming that aggravated assault is a crime of moral turpitude, held that simple assault is not a crime of moral turpitude.
Vermont also employs the moral turpitude standard. SeeState v. Gardner, 139 Vt. 456, 433 A.2d 249, 251 (1981); Vt.R.Evid. 609 (1983); 12 Vt.Stat.Ann. § 1608 (1973). In that jurisdiction, the former offense of simple assault upon the person [defined as an attempted battery] is not a crime of moral turpitude, Underwood v. Cray, 94 Vt. 58, 108 A. 513, 514
(1920) (dicta), while sexual assault upon a minor is a crime of moral turpitude, because the latter is a "socially undesirable . . . [and] base or depraved" act, State v. LaPlante, 141 Vt. 405, 449 A.2d 955, 956-57 (1982).
In New York, a witness may be impeached by showing that he has been previously convicted for "any offense," N Y Crim. Proc. Law § 60.40 (McKinney 1992), " 'which may affect his character and show him to be unworthy of belief.' " Prince,Richardson on Evidence § 498 (10th ed. 1973), quoted in N Y Crim. Proc. Law § 60.40 (Practice Commentary at 691).
The New York statutes defining assault and setting out the various degrees of that offense are very similar to the Alabama statutes on the subject. See N.Y. Penal Law §§ 120.00-120.10 (McKinney 1987). Subsections (1), (2), (4), and (5) of the New York second degree assault statute correspond, almost verbatim, to subsections (1) through (4) of the Alabama provision.Compare N.Y. Penal Law § 120.05 (McKinney 1987) with Ala. Code 1975, § 13A-6-21. In subsections (3), (6), and (7) of § 120.05, the New York provision sets out three additional ways of committing the offense of second degree assault not contained in the Alabama statute.
The New York statute defining assault in the third degree also corresponds, almost verbatim, to the first three subsections of Ala. Code 1975, § 13A-6-22, defining assault in the third degree. Third degree assault is a Class A misdemeanor in both Alabama and New York. Compare Ala. Code 1975, § 13A-6-22with N.Y. Penal Law § 120.00 (McKinney 1987). The Alabama statute provides in subsection (4) one additional means of committing the offense of assault in the third degree not contained in the New York provision.
Although we have found no New York case deciding whether a conviction for assault in the second degree may be used to impeach a witness, a New York case does hold that a conviction for assault in the third degree reflects on the credibility of a witness and may be used to impeach. In People v. Thompson,120 A.D.2d 627, 502 N.Y.S.2d 232, 233 (App.Div.), appeal denied, 68 N.Y.2d 774, 506 N.Y.S.2d 1058, 498 N.E.2d 160
(1986), the court held that it was error to deny defense counsel the right to cross-examine the complainant about her prior conviction of assault in the third degree. See alsoBrereton v. McEvoy, 44 A.D.2d 594, 353 N.Y.S.2d 512, 515-16
(App.Div. 1974) (construing a predecessor statute) (evidence that cocktail lounge employees were convicted of third degree assault for attacking a patron admissible, as bearing on credibility of employees, in patron's wrongful death action against lounge employees).
The New York rule that a witness may be impeached by "any offense . . . which may affect his character and show him to be unworthy of belief" allows the admission of fewer convictions, and is thus more restrictive than the Alabama rule that a witness may be impeached by a crime of "moral turpitude." The New York standard is derived *Page 714 
from "[t]he rule of the common law . . . that persons convicted of treason, felony, and the crimen falsi were rendered infamous, and were disqualified as witnesses." See Smith v.State, 129 Ala. 89, 91, 29 So. 699 (1901); Gordon v. State,140 Ala. 29, 38, 36 So. 1009, 1012 (1904). "[C]rimen falsi, . . . 'the crime of falsifying,' " were those crimes which
 " 'might be committed either by writing, as by the forgery of a will or other instrument; by words, as by bearing false witness, or perjury; and by acts, as by counterfeiting or adulterating the public money, dealing with false weights and measures, counterfeiting seals, and other fraudulent and deceitful practices.' "
Moore v. State, 12 Ala. App. 243, 247-48, 67 So. 789, 791
(1915), overruled on other grounds, Ledbetter v. State,34 Ala. App. 35, 36 So.2d 564, cert. denied, 251 Ala. 129,36 So.2d 571 (1948).
A former version of the Alabama witness impeachment statute, Ala. Code 1897, § 1795, provided that a witness could be impeached by his conviction of "infamous crime." Construing that Code section in Smith v. State, 129 Ala. at 92,29 So. at 699, the Alabama Supreme Court held that a witness could not be impeached by his prior convictions for assault and battery and carrying a concealed pistol. Construing the same Code section in Gordon v. State, supra, the Alabama Supreme Court held that a witness could not be impeached by showing that he had previously been convicted of " 'the offense of throwing [a] stone in a railroad train,' " because
 "a wanton or malicious throwing into a car of a railroad train is . . . neither a common-law felony nor an offense within the description crimen falsi. . . . The conviction of [the witness] for throwing stones . . . was not the proper subject of proof for the purpose of affecting his credibility or other purpose; and the admission of the record relating thereto was error for which the judgment must be reversed."
Gordon v. State, 140 Ala. at 38-9, 36 So. at 1012.
In 1907, the Alabama legislature amended the witness impeachment statute to provide that
 "[n]o objection must be allowed to the competency of a witness because of his conviction for any crime, except perjury or subornation of perjury; but if he has been convicted of a crime involving moral turpitude, the objection goes to his credibility."
Ala. Code 1907, § 4008 (current version found at Ala. Code 1975, § 12-21-162). The Code Commissioner's note following § 4008 states that the provision was "[a]mended to meet decisions in the cases of Gordon v. State, 140 Ala. 29 [36 So. 1009] andSmith v. State, 129 Ala. 29 [29 So. 699]." It is clear that the legislature intended, by substituting the "moral turpitude" standard for the "infamous crime" standard, to broaden the category of convictions available to impeach a witness in Alabama. Thus, it follows that if the more restrictive New York standard, derived from the common law "crimen falsi" rule permits impeachment of a witness by conviction for third degree assault, the Alabama moral turpitude standard allows impeachment of a witness by conviction for the more serious offense of second degree assault.
The trial court erred by not permitting the appellant to impeach the credibility of a state witness by showing that the witness had a prior conviction for assault in the second degree. The appellant's conviction is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.
[1] Many jurisdictions that had previously used either the "moral turpitude" standard or some other statutory variation abrogating the common law rule of witness incompetency have now adopted a standard patterned after Rule 609, F.R.Evid. See 3AWigmore on Evidence § 987 at 862 n. 1 (Chadbourn rev. 1970) (Supp. 1992 at 266-295).
The Alabama Law Institute has drafted a proposal also patterned after the federal rule. The proposed rule provides:
"Rule 609. Impeachment by Evidence of Conviction of Crime.
 "(a) General rule. For the purpose of attacking the credibility of a witness,
 "(1)(A) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and
 "(1)(B) evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
 "(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.
 "(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction, more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
 "(c) Effect of pardon, annulment, or equivalent procedure.
Evidence of a conviction is admissible under this rule even if the conviction has been the subject of a pardon, annulment, or equivalent procedure.
 "(d) Juvenile adjudications. Evidence of juvenile or youthful offender adjudications is not admissible under this rule.
 "(e) Pendency of appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible."
Missouri and Montana are at the extreme ends of the spectrum regarding the use of prior convictions to impeach. CompareForbis v. Associated Wholesale Grocers, Inc., 513 S.W.2d 760
(Mo.App. 1974) (a party has the absolute right to prove convictions of any crime, regardless of the nature of the crime or its remoteness, for the purpose of impeaching credibility), overruled on other grounds, Lewis v. Wahl, 842 S.W.2d 82 (Mo. 1992), with Mont.R.Evid. 609 (1977) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is not admissible").