304 So.2d 911

**Alice Faye EDGEWORTH**

v.

**STATE.**

**6 Div. 718.**

Court of Criminal Appeals of Alabama.

Dec. 17, 1974.

Ralph C. Burroughs, Public Defender, Joel L. Sogol, Asst. Public Defender, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was indicted for murder in the first degree and convicted of murder in the second degree. Her punishment was fixed at twelve years and one day in the penitentiary. She was and is indigent and was represented at both her arraignment and trial by the Public Defender's office in Tuscaloosa. She pleaded not guilty. She is in this court with a free transcript and trial counsel represents her on appeal.

The facts are not complicated. In the late afternoon of July 20, 1973, appellant shot and killed her stepfather with a pistol in a home jointly occupied by appellant, her husband, her three children by a previous marriage, her mother, and the deceased. They lived at Samantha, a small community a few miles from Tuscaloosa, Alabama.

Appellant's husband worked from 3:00 P.M. until 11:00 P.M. On the day of the homicide, the husband drove appellant and her three minor children to the headquarters of the Salvation Army in Tuscaloosa to buy clothes. The deceased and his wife followed in a pickup truck driven by the deceased. After leaving the Salvation Army, they all drove to the river to watch the boats ply the waters of the river. The husband left the family to go to his job and appellant and her children rode back home in the deceased's pickup truck. The deceased drove with his wife in the cab with him, and appellant and the children rode in the bed of the truck. They made a stop enroute home where the deceased bought a six pack of beer and a watermelon. When they arrived home, appellant picked up the watermelon and placed it on the porch and went to the chicken house. After leaving the chicken house, she entered the house by the back door and went directly to the bedroom occupied by her and her husband. Appellant's mother went to her bedroom. The deceased cut the watermelon and divided it with the children. He took his piece of the watermelon and went in the sitting room to his favorite chair in front of the television set. The children went in the yard to eat and play.

The deceased was a seventy-three year old retired policeman of the town of Berry. He kept a loaded pistol in a holster in a flower vase next to his chair. He had a marked degree of rheumatism and had to depend in a large measure on a walking cane to aid him in his movements, even to get out of a chair. He was a large man. His height was six feet two and one-half inches tall and his estimated weight was two hundred pounds.

The deceased decided he wanted some water and he called appellant's youngest son from the yard and told him to get the water for him. The boy was seven years of age and he could not reach the water and so told the deceased. The deceased became angry and raised his walking cane over his head and threatened to knock the boy's head off if he didn't get the water. The boy was backed up against the deep freeze and could not get by and he started screaming. Appellant heard her son screaming and came out of her bedroom to investigate the trouble. She asked the deceased what was going on and he told her he ordered the boy to get him some water and he wouldn't do it. Appellant told him to leave the boy alone and she would get the water for him. The deceased said no he told the boy to get the water and he was going to see to it that he got the water or he would knock his head off. He had his walking cane raised in a striking position and appellant told him not to hit the boy. The deceased turned in her direction with the cane still raised above his head. Appellant went to the chair where deceased kept his pistol and got it and fired three times point blank at the deceased. He was shot three times in the chest and died instantly.

Mr. Robert B. Johnson, Assistant State Toxicologist, whose qualifications were admitted by the defense, performed an autopsy the day after the homicide and testi-

fied that in his opinion death was the result of two gun shot wounds and from shock and hemorrhage of the two vessels which were ruptured. He said either one of the bullets entering the man's body would have proved fatal, but the one in the abdomen would have produced death more rapidly. One .38 caliber slug was recovered from the body. A blood sample was tested and was negative for alcohol in the body of the deceased.

After the shooting, appellant ran out of the house and put the gun on a lawn chair under a peach tree and went to a neighbor's house and called the Police Department and said she had shot Mr. Champion and that she was sorry. She tried to call her husband but he was out on a service call; she left word for him to come to the jail. She returned to the lawn chair where she left the pistol and sat in the chair. She put the gun on the ground beside the chair.

Members of the deceased's family soon arrived and one of them asked her why she shot the man, and she said, "Wouldn't you shoot a man who was beating your kid with a stick?"

Mr. John Anders had a part-job as an ambulance driver for Hayes Funeral Chapel in Tuscaloosa. He got a telephone call at 4:45 P.M. on July 20, 1973, to go to the home of the deceased and he arrived at 5:05 P.M. He and his helper found the deceased face down on the floor and they turned him over and applied artificial respiration in an attempt to restore life, but it was unsuccessful.

Mr. Anders walked in the back yard and saw appellant sitting in a lawn chair. A pistol was on the ground by the chair and he kicked the pistol out of her reach, picked it up and put it in his pocket. When the Sheriff came, Anders gave him the pistol.

Anders asked appellant who shot the deceased and she replied, "I did. I will kill any other ——— ——— ——— ——— that tries to kill my children."

When appellant was arrested, she smelled strongly of the odor of alcohol. She told the officer she had drunk two beers. Her speech was thick or slurred.

One kinsman of the deceased asked appellant if she could take the pistol and she refused saying, "There are no fingerprints on the pistol but mine."

The Chief Deputy Sheriff of Tuscaloosa County investigated the homicide and arrested appellant. In a search through the house, he found empty beer cans in the kitchen and in the livingroom. He also found an empty pint bottle of cheap corn whiskey on the kitchen table. He also found blood on the floor where the deceased fell after he was killed.

Photographs of the exterior and interior of the house were taken by the Chief Deputy and were admitted in evidence without objection. The walking cane was also admitted in evidence. Appellant objected to the introduction in evidence of the pistol with one unspent cartridge and two spent cartridges. The court overruled the objection and these items were admitted.

Appellant was given the *Miranda* rights and warnings and she signed a waiver of rights form and her statement was taped. The tape recording was transcribed but it was never signed by her.

The tape recording of appellant's statement was not played to the jury though it might well have been, after proper predicate, under Boulder v. State, 278 Ala. 437, 179 So.2d 20, and Flannagin v. State, 289 Ala. 177, 266 So.2d 643.

On cross-examination of appellant her transcribed statement was used by the prosecution to refresh her recollection. Most of her answers to such questions asked her about her statement were in the negative or that she could not remember making such statements. The state did not seek to impeach her but only to refresh her recollection.

It is true that a witness may not be cross-examined as to a statement made out of court which is contrary to the witness' testimony on direct examination, unless the witness being cross-examined is informed with reasonable certainty to the time, place, circumstances, persons involved, and statement alleged to have been made by him out of court. Sparks v. State, 261 Ala. 2, 75 So.2d 103.

But, this rule does not apply here as the prosecution did not attempt to impeach appellant but sought only to refresh her recollection, and she said she was so upset that she could not remember the statement, and, furthermore, she could not read.

During the direct examination of appellant, the District Attorney objected to some of the questions being asked and charged that defense counsel was putting words in the witness' mouth. Defense counsel moved for a mistrial, saying:

"We move for a mistrial. Mr. Lackey, I have never seen a lawyer in my life misbehave like he has in this trial and I move for a mistrial because of his misbehavior."

The Court overruled the motion for a mistrial.

The record reflects that counsel for both sides made side bar statements and comments during the trial of this case. Side bar remarks have no place in the trial of any case and should be studiously avoided by all parties as they tend to lessen respect for the judicial process and our adversary system of justice.

Granting a mistrial is discretionary by the trial court and will not be interfered with unless there has been a clear abuse of discretion. Franks v. State, 45 Ala.App. 88, 224 So.2d 924.

We find no abuse of discretion in this case.

Appellant complains that the court erred in permitting the District Attorney to question a witness on re-direct examination as to matters that were not gone into on direct examination. No error intervened here.

Allowance of questions on re-direct examination rests in the discretion of the trial court even though the matters inquired about were not strictly in rebuttal of any matter brought out on cross-examination. Gautney v. State, 284 Ala. 82, 222 So.2d 175.

There was no motion to exclude the state's evidence and no motion for a new trial; there was no request for the affirmative charge and no exceptions reserved to the oral charge of the court; there were no unfavorable rulings of the court in the admission of evidence. In this posture of the record, nothing is presented for review. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Grant v. State, 46 Ala.App. 232, 239 So.2d 903; Robinson v. State, 46 Ala.App. 684, 248 So.2d 583.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.