375 So.2d 540 (1979)
Tommy BASS
v.
STATE.
8 Div. 197.
Court of Criminal Appeals of Alabama.
August 21, 1979.
As Corrected On Denial of Rehearing October 2, 1979.
*541 Robert Straub, Decatur, for appellant.
Charles A. Graddick, Atty. Gen., and Jimmy L. DeBardelaben, Asst. Atty. Gen., for appellee.
LEIGH M. CLARK, Retired Circuit Judge.
Appellant was convicted of rape. The court fixed his punishment at ninety-nine years imprisonment in the penitentiary and sentenced him accordingly.
The victim was an eleven-year-old girl. According to her testimony, she and her twelve-year-old brother went to a grocery store in Decatur about three or four o'clock in the afternoon of July 21, 1978. Each had ridden a bicycle to the store; her brother went into the store and she stayed outdoors on her bicycle. Somebody came from behind her, got on her bicycle with her and took off down the street. She jumped off the bicycle somewhere near a railroad crossing and tried to run, but the man caught her and choked her. He took her to a little shed, threw her down, pulled off her clothes, and had intercourse with her. She identified defendant as the man who did it. She said her brother came up while defendant was on top of her, and defendant told her brother to leave, that he would beat him up if he didn't, and that her brother left. Her brother came back with some men, and defendant got on her brother's bicycle and pedalled away.
The testimony of the victim was substantially corroborated by the testimony of her brother, who also identified defendant as the man who rode away with her on the bicycle to the place where he saw defendant on top of the victim and that he had thereafter obtained help, returned to the scene where defendant rode away on the brother's bicycle.
Neither the victim nor her brother knew defendant at the time.
Lester Cross was an important witness for the State. He worked at a service station on Church Street in Decatur, and had known defendant all of his life. He testified that the victim's brother came to the service station and asked "for some help to go up there and get a man off his sister." He and others followed the boy back to where he came from; he saw defendant at the time choking the little girl at a lumber yard. When they approached, defendant turned the girl loose, jumped on a bicycle and rode off. The two were standing up just before the defendant left.
Defendant took the stand and positively denied the accusation, stating that he was not present when and where the victim said the attack occurred. He said he had been working that day, that he had drunk a six-pack of beer, that he was living at the time partly with his parents and partly with Betty Felton and her sister. He went to his mother's house after work and bathed and changed clothes and then went to Betty Felton's house about a block away, getting *542 there about 3:45 or 4:00, went to Betty's mother's house to obtain gin and beer, then went to his mother's house where he ate and returned to Betty's house about 5:30 or twenty minutes to six. After talking a few minutes, he went upstairs and went to bed. He was awakened by Betty who told him that some people had said that he had raped a little girl. He said that on the night of the alleged rape, the stepfather of the girl accused him of raping her, tried to get him to get into a car with the stepfather and others, that he refused and ran away. The stepfather fired twice at him. He was then advised to leave town because his advisers were afraid that the stepfather of the girl would shoot him if he stayed in town. He went to California, used the name of Tommy Bass there, showed his driver's license to the officers that arrested him on a felony warrant charging him with the crime constituting the basis of the instant case.
Defendant was substantially corroborated as to his claimed alibi by Betty Felton, who also testified that after hearing of the alleged rape, she went to the home of the victim and her mother and asked the victim if Tommy Bass had raped her and she answered, "No."
During the redirect examination of Betty Felton as a witness for the State, the following occurred:
"Q (By Mr. Straub) You know Lee Cross?
"A Yes.
"Q He and Tommy been into it sometime before this took place?
"MR. MOEBES: We object.
"THE COURT: Sustained.
"MR. STRAUB: We except.
"Q (By Mr. Straub) Did you ever talk to the police about this case?
"A No, I did not."
Appellant insists that the court was in error in sustaining the State's objection to the question: "He and Tommy been into it sometime before this took place?" Appellant argues that the sustention of the objection to the question constituted a denial of defendant's right "to present evidence showing ill feeling or bias or prejudice of a witness in a criminal case." In support of this contention, he cites Ex parte Morrow, 210 Ala. 63, 97 So. 108 (1923); Shiflett v. State, 262 Ala. 337, 78 So.2d 805 (1955); and Hicks v. State, 4 Ala.App. 120, 59 So. 231 (1912). Unquestionably, defendant did have the right to show, if he could do so in a proper manner, any "ill feeling or bias or prejudice" toward defendant of the important witness Lester Cross. We fail to see, however, that any answer to the question to which the objection was made and sustained would tend to show "any ill feeling or bias or prejudice" on the part of the witness Lester Cross. We have no idea what was meant by the question. The record shows that both the witness and defendant had been convicted of felonies. Whether the question referred to their having been so convicted, we do not know, but we do not see that such fact would tend to show hostility any more than it would tend to show the opposite. The question was palpably leading, which of itself would have justified a sustention of any objection. Moreover, in order to show bias of an adverse witness by evidence of his conduct or statement indicating such bias, the conduct or statement should first be brought to the attention of the witness whose testimony is assailed. At the time of the question asked the witness Betty Felton, the witness Lester Cross had been lengthily cross-examined by defendant, and he was not questioned concerning any possible "ill feeling or bias or prejudice" toward defendant. What was stated in Wright v. State, Ala.Cr.App., 343 So.2d 795, 799-800, cert. den. 343 So.2d 801 (1977), is applicable here:
"However, before independent evidence of conduct or statements may be offered to indicate bias on the part of an adverse witness, the particular conduct or statement proposed to be proven must first be called to the attention of the witness whose testimony is under attack. Since no predicate of any kind had been laid by appellant during the cross-examination of Deputy Hill, the trial court's ruling on the objection was correct. Brown v. State, 50 Ala.App. 702, 282 So.2d 322. *543 See Wells v. State, 292 Ala. 256, 292 So.2d 471; Arnold v. State, Ala.Cr.App., 339 So.2d 616; C. McCormick, Evidence, Second Edition, Section 40."
Appellant urges that the trial court was in error in permitting the witness Lester Cross to testify as to what the victim's brother said when he came to Lester Cross asking for help. To show with accuracy the objection of the defendant and the ruling of the court, we quote from the record as follows:
"A He run up there crying and asked some of the men for some help to go up there and get a man off of his sister.
"MR. STRAUB: We object.
"THE COURT: Sounds like it is spontaneous, if it is it would be an exception to the hearsay rule. Go ahead. If it appears that is not the case, I will entertain a motion to exclude. You can go ahead and answer.
"A He came running up to the station and asking for some help to get that man off of his sister.
"MR. STRAUB: We renew our objection.
"THE COURT: Let him finish first.
"Q (By Mr. Moebes) Did he say anything else at that time?
"A No, only thing
"MR. STRAUB: Now we object again. He said, `No.' And then he was going to start something else, we object to the hearsay.
"THE COURT: Let him finish his answer.
"Q (By Mr. Moebes) Go back, if you would, please, Lee, and tell the ladies and gentlemen of the jury as best you recall exactly what Michael Howard Jones said when he ran up to the station, if in fact he said anything.
"A He asked for some help to get that man off of his sister.
"Q All right. Then
"MR. STRAUB: We renew our objection and ask that it be excluded.
"THE COURT: Overruled.
"MR. STRAUB: Except.
"THE COURT: All right."
The perennial litigious question whether one's oral statement made at, or close to, the time of a material occurrence shown by the evidence is inadmissible as hearsay or comes within the "spontaneous exclamation or res gestae exception" to such rule of exclusion turns primarily on whether the circumstances show it to be the product of deliberative, calculated thought on the one hand or spontaneity on the other. The subject is treated comprehensively, with citations of supporting authorities, by Judge McElroy in Gamble, McElroy's Alabama Evidence, § 265.01 (1977). In § 265.01(11), he says:
"Generally, a person's statement concerning a startling occurrence made while he is perceiving the occurrence, or soon after his perception thereof, and while he is under the stress of a nervous excitement created by such perception, is admissible as tending to prove the truth of the matter asserted. A statement of this kind is frequently referred to as a spontaneous exclamation or excited utterance and is an exception to the hearsay rule.
"The statement must be the apparently spontaneous product of that occurrence operating upon the visual, auditory, or other perceptive sense of the speaker. The declaration must be instinctive rather than deliberative. In short, it must be the reflex product of the immediate sensual impressions, unaided by retrospective mental action."
We need go no further than to analyze the statement made by the witness and apply the principles of distinction stated above. That the occurrence was of a most startling nature is beyond question; that the witness was under the stress of nervous excitement while seeing, and immediately after seeing, such startling occurrence, is beyond reasonable doubt; the evidence indicates that the startling occurrence was still in progress; what he said, as well as what he did, was patently intuitive and not reflective. Hardly a more succinct utterance could have been made that would have constituted an intelligible appeal for the help that was instantly needed.
*544 The occurrence the witness said he saw would have been startling to a person of any age and probably would have produced spontaneous words and action. However, it is significant to note that the first illustration of spontaneity in Webster's Third International Dictionary is "the spontaneity of a child." We must conclude that the statement of the twelve-year-old brother of the victim was a spontaneous exclamation that brought it within an exception to the hearsay rule.
Should we have more serious concern as to the admissibility of the statement, we would nevertheless uphold the trial court's ruling. The record shows that the trial judge studiedly considered the question of spontaneity of the statement and concluded that it was spontaneous. His action was well within the limits of the discretion of the trial court on the subject. Harrison v. Baker, 260 Ala.App. 488, 71 So.2d 284 (1954); Jones v. State, 53 Ala.App. 690, 304 So.2d 34, cert. denied 293 Ala. 761, 304 So.2d 38 (1974); Lunsford v. State, 2 Ala. App. 38, 56 So. 89 (1911).
We should say also that it is difficult to find in the record any harm to appellant by reason of the admission in evidence of the boy's statement. The real issue on the trial was that of the identity of defendant. The testimony is undisputed as to what occurred, which included the content of the brother's statement. An entirely different occasion would be presented for showing some injury to defendant if the contested issue had been as to what was done instead of who did it, the latter being the actual issue in this case.
On redirect examination of the witness Betty Felton, defendant's counsel asked her whether on the occasion that she had talked with the alleged victim and her mother, the afternoon of the alleged crime, the child's stepfather also was present, and the witness replied that he was. Then the record shows the following:
"Q Did he make any statement to you in the presence of that little girl as to who told him or if anybody told him it was Tommy Bass that did it?
"THE COURT: Just a minute. Now is there an objection to that?
"MR. MOEBES: Yes, sir.
"THE COURT: Sustained.
"MR. STRAUB: We except."
Appellant says the ruling of the court was erroneous.
The witness had testified rather extensively. The cross-examination was relatively short, constituting about a page and a half of the record, in which we find nothing that would serve as an object of rebuttal by an answer to the question to which the State's objection was sustained. Aside from serious question as to the admissibility of the evidence sought by the question, the allowance or disallowance of it on redirect examination in the circumstances stated was within the discretion of the trial court. Treadwell v. State, 168 Ala. 96, 53 So. 290 (1910); Gautney v. State, 284 Ala. 82, 222 So.2d 175 (1969); Edgeworth v. State, 54 Ala.App. 93, 304 So.2d 911 (1974).
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
In his brief on application for rehearing, appellant's able and dedicated counsel apparently misunderstands that part of the opinion in the instant case in which it was held that the sustention of the State's objection to a question asked on redirect examination of the witness Betty Felton was within the discretion of the trial court. In the brief it is stated:

*545 "The Court upheld the Trial Court on the ground that it was questioning on redirect examination on a subject not brought out on direct examination." [emphasis supplied]
In reaching that conclusion, we stated:
"... The cross-examination was relatively short, constituting about a page and a half of the record, in which we find nothing that would serve as an object of rebuttal by an answer to the question to which the State's objection was sustained...."
The writer should have made it clearer that the conclusion reached was without reference to "a subject not brought out on direct examination" but to the absence of such subject in the cross-examination of the witness; the cases cited stand for the proposition that the allowance or disallowance of a question on redirect examination pertaining to a subject not brought out on cross-examination is within the discretion of the trial court. In furtherance of appellant's argument in his brief, he requests that pursuant to Rule 39, Alabama Rules of Appellate Procedure, we set out herein a certain part of the testimony of the particular witness on direct examination, which we gladly do as follows:
"Q Did you talk with the little girl down there?
"A Yes.
"Q What did you ask her?
"A The question was asked if the young man had did anything to her, and she said, `No.'
"Q She said, `No.'
"A Right.
"Q Now, was her mother present at that time?
"A Yes, she was.
"Q Did you talk to the mother?
"A Yes.
"Q Did you ask her mother anything?
"A I asked her mother had she took the little girl to the doctor, and she said no, because she had just got home.
"MR. MOEBES: We
"Q (By Mr. Straub) She had just got home?
"A Right.
"Q So she hadn't taken her to the doctor then?
"A That is what she told me.
"Q Was anyone else present when that conversation took place?
"A Yes.
"Q Who all was there?
"A My sister, myself, girl named Rose Steel, the little girl's mother and father and the little girl's older sister."
Contributing perhaps to some extent to the misunderstanding is an incorrect reference in the opinion to Betty Felton "as a witness for the State." The reference should have been to her as "a witness for the defendant," and appropriate correction is being made.
The only other insistence of appellant at this time is that in holding that the trial court was not in error in admitting in evidence as a "spontaneous exclamation or res gestae exception" what the victim's brother said when he came to Lester Cross asking for help, the cases cited in support of such conclusion "all refer to exclamations made either by the victim of the crime or the defendant charged therewith." Continuing, the brief states: "In the case under consideration, the reported spontaneous exclamation is not that of a victim or a defendant but of a third party." The rationale of the exception to the hearsay rule is not limited to exclamations of the defendant, a victim, or anyone else. Of course, the exclamation must meet other requirements, such as that it must be as to a matter as to which the declarant would have been permitted to testify if he were the witness testifying.
"The spontaneous exclamation of a bystanding observer is admissible the same as if he had been a participant in the exciting occurrence." Gamble, McElroy's Alabama Evidence, 265.01(8) (1977).
The application for rehearing is overruled.
APPLICATION FOR REHEARING OVERRULED; OPINION CORRECTED AND EXTENDED.
All the Judges concur.