[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 506 
First degree murder; sentence; life imprisonment.
The appellant purchased a tape player for $5 from the deceased. Shortly thereafter, a young boy informed the appellant that the tape player belonged to him. After repeatedly demanding a refund from the deceased to no avail, the appellant shot and killed him.
 I
The appellant turned himself in to the police the morning following the crime. Sergeant Albert Wallace of the Birmingham Police Department homicide unit tape recorded a confession given by the appellant at the city jail. The tape was later transcribed into a typewritten statement by a police department secretary.
The appellant submits that the trial court committed reversible error by allowing Sergeant Wallace's testimony into evidence concerning the extra-judicial confession. He offers two grounds in support of this argument: (1) that the confession, orally made and later reduced to typewritten form, was not signed by the appellant, and (2) that the State failed to prove the voluntariness of the confession because only one police officer was present when he made the statement. These contentions are without merit.
As Justice Bloodworth wrote in Thomas v. State, Ala.Cr.App.,373 So.2d 1149, affirmed, Ala., 373 So.2d 1167, 1168 (1979): "The oft-stated rule in Alabama is that a confession is primafacie involuntary and inadmissible, and the state must show voluntariness and a Miranda predicate in order to admit it." However, the law does not require that a confessory statement be signed by the defendant. McBryar v. State, Ala.Cr.App.,368 So.2d 568, cert. denied, Ala., 368 So.2d 575 (1979). Additionally, Sergeant Wallace testified not as to what the writing contained, but as to what he heard the appellant say.
The trial judge heard testimony from Sergeant Wallace on voir dire as to the circumstances surrounding the appellant's confession. The police officer avowed that he fully explained and read to the appellant his Miranda rights both before and after the appellant gave his confession. *Page 507 
Sergeant Wallace also testified that no intimidation was threatened or inducement offered to get the appellant to make the statement. The trial judge need only be convinced from a preponderance of the evidence that the confession was knowingly and voluntarily made. Lego v. Twomey, 404 U.S. 477,92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Baldwin v. State, Ala.Cr.App.,372 So.2d 26, affirmed, Ala., 372 So.2d 32 (1978); Ard v. State, Ala.Cr.App., 362 So.2d 1320 (1978). The admissibility of such testimony is to be determined by the trial judge in the exercise of enlightened discretion, and his decision will not be disturbed unless it is palpably contrary to the weight of the evidence. Baldwin and Ard, supra.
 II
Secondly, the appellant contends that the corpus delicti was not proved by the State independent of the confession in order to support a murder conviction. We disagree.
Appellant's argument is based on an erroneous assumption that proof of the corpus delicti must include evidence of the appellant's guilty connection with the alleged crime. The correct rule in a prosecution for murder is that the corpus delicti consists of two elements: (1) death of the victim named in the indictment, and (2) death caused by the criminal agency of another. Johnson v. State, Ala.Cr.App., 378 So.2d 1164, writ quashed, Ala., 378 So.2d 1173 (1979); Horsley v. State, Ala.Cr.App., 374 So.2d 363, affirmed, Ala., 374 So.2d 375
(1978).
In the instant case, Jay Glass, Chief Medical Investigator for the Jefferson County Coroner-Medical Examiner's Office, testified that the cause of death was shock and hemorrhaging resulting from a gunshot wound through the heart. His testimony proved the corpus delicti and made admissible the testimony concerning the confession of the appellant. Petty v. State, Ala.Cr.App., 358 So.2d 529 (1978).
 III
Another issue raised on appeal is that the trial court erred in overruling appellant's motion for a mistrial raised after a witness for the appellant appeared before the jury wearing pants inscribed with "City Jail, City of Birmingham."
The appellant had an instanter subpoena issued for the witness from the Birmingham City Jail during the trial. This witness was accompanying the appellant on the night when the crime occurred. During defense counsel's direct examination, he asked the witness to leave the witness stand to make identifications on a blackboard. The witness was questioned at the blackboard by the appellant's attorney and returned to the witness stand. He was subsequently cross-examined by the State and excused. Following an overnight recess, appellant's counsel moved for a mistrial because the witness had been wearing prison garb with the above described wording on the pants.
The record does not reveal how large this lettering was so as to determine whether the words were visible to the jurors. Surely, if they were large enough for them to read, defense counsel would have also noticed the inscription and immediately made the proper motion rather than continuing with direct examination. Appellant's attorney waited too late to move for a mistrial here. Everhart v. State, Ala.Cr.App., 358 So.2d 1058, cert. denied, Ala., 358 So.2d 1064 (1978); Clark v. State,280 Ala. 493, 195 So.2d 786 (1967).
Furthermore, it was a witness for the appellant who appeared in prison clothes and not the accused himself. He was brought to court from the jail on an instanter subpoena at the behest of the appellant. In Cook v. Beto, 425 F.2d 1066 (5th Cir. 1970), cert. denied, 400 U.S. 944, 91 S.Ct. 248, 27 L.Ed.2d 249
(1970), the appellant's co-defendant was dressed in jail clothing when he was brought into the courtroom for identification, and the court found that this resulted in no prejudice to the appellant. The conduct of a trial rests squarely in the discretion of the presiding judge and, unless it appears that there has been an abuse of discretion, we will not *Page 508 
interfere. We find no such abuse here and, therefore, the trial court's ruling on the motion for a mistrial was without error.
 IV
Next, appellant argues that the trial judge erred when he refused to allow appellant's former attorney to participate in his defense. The jury was qualified, sworn and empaneled late in the afternoon of October 24, 1979. When they reconvened the next morning, Robert Jones, appellant's former attorney, appeared before the court to assist David Sullivan, appellant's attorney of record. The trial judge informed Mr. Jones that as he was not present at the qualification of the jury he could not participate in the trial of the case.
Despite Mr. Sullivan's assertions to the contrary at a subsequent hearing, the record is bare of any prior agreement between Mr. Sullivan, the prosecutor and the trial judge that Mr. Jones could participate in the trial despite his absence while the jury was being qualified. Although the apparent misunderstanding is regrettable, we cannot be guided by anything that is not in the record or is not agreed upon by the parties on appeal. Shelton v. State, Ala.Cr.App., 371 So.2d 451
(1979). We are in accord with the similar case of Sellers v.State, 56 Ala. App. 367, 321 So.2d 706, cert. quashed, 295 Ala. 417, 321 So.2d 708 (1975), and hold that the trial judge did not abuse his discretion when he refused to allow Mr. Jones to participate in the case at bar.
 V
During the deliberations of the jury, the following occurred:
 "(Whereupon the jury was then called back into the courtroom at 11:22 A.M., at which time the following proceedings were had and done:)
 "THE COURT: Mr. Arthur, as the foreperson you have sent out a note which says: `We, as the jury, would like the criteria concerning the sentencing of each verdict, that is, for murder first degree, murder second degree, manslaughter first degree.'
"What do you mean by the criteria?
 "FOREPERSON ARTHUR: Your Honor, as a jury we would like to go over and see and know what the four elements are that —
 "THE COURT: All right. Would you like for me to read those elements again?
"FOREPERSON ARTHUR: May I ask you a question, sir?
"THE COURT: Yes, sir.
 "FOREPERSON ARTHUR: Some of the jurors would like to know if we could take a note down as to the four?
"THE COURT: Yes, you may take notes down.
"FOREPERSON ARTHUR: Okay. Thank you.
The trial judge proceeded to recharge the jury as requested and then added:
 "All right. Now, I have given you part of the charge. Do not isolate that part of the charge. Also consider reasonable doubt, burden of proof and presumption of innocence and also self-defense. Consider all of that along with what I have just repeated here."
Appellant takes the position that when the jury returned and requested the court to reread the instructions on first degree murder, second degree murder and first degree manslaughter the court was in error when it did not reread the full charge on self-defense. The court was not in error.
The record does not indicate any exceptions to this additional charge. Thereupon, any objection was waived and cannot be raised for the first time on appeal. Clifton v.State, Ala.Cr.App., 359 So.2d 853 (1978).
 VI
While appellant's attorney was cross-examining a witness, the district attorney commented, "Judge, I think this lawyer needs to have a little lesson in proper evidence." The record does not disclose any objection following this remark. Later, while defense counsel was delivering his closing argument, the court overruled the *Page 509 
State's objection to defense counsel's assertion that the jury would be "putting defendant away for the rest of his life." During the State's rebuttal, the district attorney argued that appellant's attorney "lied" with respect to this assertion. The defense attorney objected, and the trial judge warned the prosecutor not to "attack Mr. Sullivan personally." Appellant's attorney did not request instructions to the jury, move to exclude the statement or move for a mistrial.
Appellant bitterly complains that the prosecutor was guilty of misconduct during the trial of this case in making these derogatory remarks and casting aspersions upon the competence and integrity of defense counsel. We believe that sidebar remarks criticizing, disparaging or vilifying accused's attorney have no place in the trial of any case. Chatom v.State, Ala.Cr.App., 360 So.2d 1068, cert. denied, Ala.,360 So.2d 1074 (1978); Scroggins v. State, Ala.Cr.App.,341 So.2d 967 (1976), cert. denied, Ala., 341 So.2d 972 (1977); Edgeworthv. State, 54 Ala. App. 93, 304 So.2d 911 (1974). However, an attack on opposing counsel should be distinguished from a verbal assault on the accused. As the Alabama Supreme Court aptly stated in Arant v. State, 232 Ala. 275, 167 So. 540
(1936); "[A] trial is a legal battle, a combat in a sense, and not a parlor social affair." Our court in Hurt v. State, Ala.Cr.App., 361 So.2d 1163, 1166 (1978), quoted from 99 A.L.R.2d 528 (1965):
 "`The range of a prosecutor's remarks has an important bearing on the extent of their impropriety. When he confines himself to an attack on opposing counsel personally, his remarks may be censurable but they will not usually be held prejudicial to the accused's right to a fair trial.'"
We do not believe that these remarks were prejudicial to the appellant's cause.
There is no exact legal standard by which the prejudicial qualities of the improper remarks of a prosecutor in the trial of a case can be gauged. Each case must be determined on its own merits and attendant circumstances. Lawson v. State, Ala.Cr.App., 377 So.2d 1115, cert. denied, Ala., 377 So.2d 1121
(1979); Hurt, supra. "No one has a better vantage point from which to observe the parties, the issues and the general circumstances than the trial court and great weight should be accorded its determination." Harrison v. State, Ala.Cr.App.,340 So.2d 849, 852, cert. denied, Ala., 340 So.2d 854 (1976).
Likewise, because appellant's attorney made no objection following the prosecutor's first comment, this claim of error cannot be taken advantage of for the first time on appeal.Scroggins, supra. Similarly, the general rule is that improper argument of counsel is not subject to review on appeal unless there was due objection by counsel or a motion to exclude, anadverse ruling thereon by the court or a refusal by the trial court to make a ruling. Lawson, supra. Appellant's counsel timely objected when the district attorney claimed that he had "lied" to the jury. Appellant received a favorable ruling, and his attorney made no motion to instruct the jury, no motion to strike or exclude or no request for a mistrial. He has no adverse ruling from which to appeal. Chatom, supra.
 VII
Finally, the appellant submits that the cumulative effect of the prosecutor's trial tactics created reversible error. Where no single instance of alleged improper conduct constituted reversible error, we do not consider their cumulative effect to be any greater. Sprinkle v. State, 368 So.2d 554, writ quashed, Ala., 368 So.2d 565 (1978).
A careful search of the record reflects no error injuriously affecting the substantial rights of the appellant.
AFFIRMED.
All the Judges concur. *Page 510