[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 254 
The appellant, Marvin Felton Whitlow, Jr., was convicted of trafficking in cannabis and sentenced to five years' imprisonment.
An Auburn, Alabama, police officer arrested one Donald Pouncey for the sale of marijuana to undercover officers. Pouncey agreed to cooperate with the police in arresting other individuals selling marijuana. On October 23, 1985, the officers monitored a conversation between Pouncey and a Ricky Smith, which set up a drug buy. One of the police officers posed as a wealthy student who wanted to buy enough marijuana for all the members of his college fraternity. Later that night, the officer and Pouncey first encountered appellant Whitlow and Smith in Auburn. The officer and Pouncey then followed Whitlow and Smith, who travelled in a van, outside the city of Auburn onto an isolated road. Smith gave the officer a bag of marijuana in exchange for $2,050.00 handed him by the officer. The appellant stated to Pouncey that he was getting some of the money for driving the van. Smith and the appellant returned to the van and left. The officer posing as a college student then notified the Auburn Police Department that the transaction was completed and brought the marijuana to headquarters.
The police set up a roadblock in order to apprehend appellant Whitlow and Smith. Around 1:00 a.m., their van approached the roadblock. The appellant, although ordered to stop, crashed the roadblock, hitting a police car and injuring an officer. Appellant's companion, Smith, stated that he threw the money out of the window. Before appellant was interviewed, the police read him his Miranda rights. The appellant said he understood them and signed a waiver-of-rights form. The appellant originally denied knowledge of the drug buy transaction, but later admitted to all the events that occurred that night.
 I
The appellant first argues that the trial court erred to reversal when it admitted into evidence the taped conversation between Smith and Pouncey. In this case, the appellant was in Smith's presence when Pouncey telephoned Smith to set up the drug deal. The appellant drove the vehicle used in the deal and was to receive some of the money made from the sale of the marijuana. An unlawful conspiracy may be proved from the conduct of the parties, the circumstances of the act, and conduct of the accused after the act. Eldridge v. State,418 So.2d 203 (Ala.Cr.App. 1982); Cox v. State, 367 So.2d 535
(Ala.Cr.App. 1978), writ denied, 367 So.2d 542 (Ala. 1979). Where an unlawful conspiracy exists, any act or statement made by the accused's coconspirator before committing the crime in furtherance of the conspiracy is admissible against the accused. Eldridge, supra; Cox, supra. Therefore, the trial court did not err in receiving into evidence the taped conversation.
 II
The appellant argues that the trial court erroneously received into evidence the appellant's written statement. Before an accused's confession can be received against him, both voluntariness and a Miranda predicate must be shown.Malone v. State, 452 So.2d 1386 (Ala.Cr.App. 1984); Thomas v.State, 373 So.2d 1167 (Ala. 1979). The appellant makes no contention that his Miranda rights were not explained to him. *Page 255 
He argues that his confession was not voluntary, because, he says, he was too frightened to knowingly and intelligently waive his rights. The relative courage or cowardice of a suspect giving a statement to police may be considered by a court as an element of mental attitude in weighing "voluntariness." Voluntariness of an alleged confession is a question for the trial court and we will not disturb the court's ruling unless it appears to be manifestly wrong.Tice v. State, 386 So.2d 1180 (Ala.Cr.App. 1980). In this case, the appellant's assertion of fright was just one of many things for the trial court to weigh. The objective evidence was that the confession was voluntary and we find no reason to disturb the trial court's ruling.
 III
The appellant next argues that a sufficient chain of custody was not established for receiving the marijuana into evidence. The appellant argues that the absence of his or his co-defendant's name on the package of marijuana and an incorrect date on the package breaks or casts doubt on the chain of custody. A reasonable probability that the item is the same as the evidence at the beginning of the chain of custody is required, not an absolute certainty that the evidence was not tampered with. Slaughter v. State, 411 So.2d 819
(Ala.Cr.App. 1981), cert. denied, 411 So.2d 819 (Ala. 1982).
In this case the police officer testified that after he took the marijuana purchased from Smith and the appellant, he placed it in a bag and sealed it. He then placed it in the evidence locker at police headquarters. The bag remained in the locker until the same officer sent it to the State Forensic Sciences Laboratory. The material was determined to be marijuana. The marijuana was placed in three small bags in order for it to be used in appellant's trial, and then it was turned over to another officer. It remained in this police officer's custody until the trial. All participants in the chain testified to this series of occurrences. The police officer marking the bag testified that he knew the reason for a different date appearing on the container. The incorrect date was written on the bag because another label was used as an example, and he inadvertently copied the date from the other label. The appellant cites no authority for the proposition that an error of date and the absence of his name breaks the chain of custody. From the testimony given at trial, the court was well justified in finding that a reasonable probability existed that the evidence submitted at trial was the same as the evidence seized at the beginning of the chain.
 IV
The appellant argues that the state did not present a prima facie case of trafficking in cannabis. Trafficking is defined in § 20-2-80, Code of Alabama 1975:
"Except as authorized in chapter 2, Title 20:
 "(1) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as 'trafficking in cannabis.' If the quantity of cannabis involved:
 "a. Is in excess of one kilo or 2.2 pounds, but less than 2,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $25,000.00.
 "b. Is 2,000 pounds or more, but less than 10,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of five calendar years and to pay a fine of $50,000.00.
 "c. Is 10,000 pounds or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and to pay a fine of $200,000.00."
The state presented evidence that the appellant knowingly participated in the sale of 2.92 pounds of marijuana to an undercover police officer. The fact that the appellant claimed otherwise presented a question for the jury. Conflicting evidence *Page 256 
is a question for the jury. Suggs v. State, 403 So.2d 309
(Ala.Cr.App. 1981), cert. denied, 403 So.2d 313 (Ala. 1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648
(1981). We find that the state presented evidence from which the jury could have been convinced beyond a reasonable doubt that each element of the crime was proven.
 V
The appellant argues that he was denied his constitutional right to a fair and impartial trial, upon several grounds. He first argues that the failure of the state to comply with the court's discovery order denied him a fair trial. The state complied with the order, with the exception of one statement. At trial it was discovered that the appellant had not received one of the statements. This omission was promptly remedied.
The appellant argues prosecutorial misconduct in the prosecutor's comments and questioning during cross-examination and closing argument. On cross-examination by Mr. Wilkes, the following occurred:
"A: Ricky is a dope dealer in my opinion.
 "Q: But in Ricky's opinion he's not a dope dealer, is he?
"A: Right.
 "Q: Okay. And in Ricky's opinion he was not trafficking marijuana October the 24th; did you hear him say that?
"A.: No, I did not.
 "Q: Ricky's the dope dealer, Ricky's in the big time, Ricky's making the big money; is that correct? Or your assumption?
"A: That's my assumption, I would say.
 "Q: Did you know that Ricky's lawyer in his case was appointed by the Court?
 "A: He told me that he couldn't afford an attorney, that when he went for, not a guilty plea, that he was going to have one appointed.
 "Q: Did you know that to have a lawyer appointed for you you have to be classified by the Court as indigent or broke?
 "A: Broke, no money, right. Yes, I knew that. I knew that when I came to Court.
"Q: Is Mr. Cook appointed or is he hired?
"A: He's hired.
 "MR. COOK: If you're going to get into that, how much is he being paid?
"THE COURT: Don't comment.
 "MR. COOK: Excuse me, Your Honor. Your Honor, I would like to approach the bench on that question.
"THE COURT: All right.
 (Thereupon, the following proceedings were had in the presence of but out of the hearing of the jury.)
 "MR. COOK: I object at this time and move for a mistrial on the basis of his distinction and clarification as to whether or not this gentleman hired an attorney as trying to impute by the fact that he would hire a lawyer as opposed to having the court appoint one for him, that that in some way makes him guilty, shows that he has proceeds from a drug transaction and it is an impermissible infringement upon a person's right to hire his own counsel and select his counsel for the State to question and comment on the same to try to infer guilt with it.
"THE COURT: Your Objection is overruled.
"MR. COOK: Reserve an exception."
In regard to questioning witnesses, we should consider the impact of the prosecutor's statements in a particular trial and not in the abstract. Wysinger v. State, 448 So.2d 435
(Ala.Cr.App. 1983). In reviewing the cross-examination by the prosecutor, we find no reversible error resulted.
The appellant also argues that prosecutorial misconduct occurred during closing arguments. The statement objected to is as follows:
 "CLOSING ARGUMENT BY MR. WILKES: " — but we have not come in the Courtroom and lied or stretched the truth or asked anybody to stretch the truth and I kind of resent that insinuation on Mr. Cook's part. I'm *Page 257 
not able to sit up here and cry or attempt to cry like Mr. Cook. I didn't take drama classes like he did but I don't appreciate him insinuating — "
 "MR. COOK: I object to any reference that I took drama classes, Your Honor.
"THE COURT: Argue the evidence."
Disparagement of counsel for the accused is never proper and has no place in any trial of any case. 23A C.J.S. Criminal Law, § 1090 (1961); Thomas v. State, 393 So.2d 504 (Ala.Cr.App. 1981). A prosecutor may strike "hard blows," but not "foul blows." Berger v. United States, 295 U.S. 78, 55 S.Ct. 629,79 L.Ed. 1314 (1935); Crosslin v. State, 446 So.2d 675
(Ala.Cr.App. 1983). "An attack on opposing counsel should be distinguished from a verbal assault on the accused." Thomas, 393 So.2d at 509. "The range of a prosecutor's remarks has an important bearing on the extent of their impropriety. When he confines himself to an attack on opposing counsel personally, his remarks may expose him to censure by the court or discipline by the bar association, but they will not usually be held prejudicial to the accused's right to a fair trial." 99 A.L.R.2d 528 (1965); Thomas v. State, supra; Hurt v. State,361 So.2d 1163 (Ala.Cr.App. 1978). In this case, we interpret the prosecutor's words as an effort to bolster his case by demeaning opposing counsel in saying counsel is displaying false emotions before the jury. The prosecutor in fact is accusing defense counsel of intellectual dishonesty. "We do not condone the vituperative remarks made by the prosecutor. On the contrary, we condemn such remarks and the conduct of the prosecutor as being unworthy of his role as a prosecuting attorney." Scroggins v. State, 341 So.2d 967, 971 (Ala.Cr.App. 1976), cert. denied, 341 So.2d 972 (Ala. 1977). The comment in this case, directed solely at appellant's counsel, was not prejudicial to the point of reversal.
Appellant also objected to the following statement:
 "CLOSING ARGUMENT BY MR. WILKES: " — people steal and burglarize to get property to sell to buy drugs. We know that. The police know it. Felton is not stealing and burglarizing. But there are people out in Lee County right now breaking in somebody's house and stealing something to get money to buy drugs — "
 "MR. COOK: If it please the Court, I would object as being improper argument.
"THE COURT: Overruled.
"MR. COOK: Note an exception."
This court has written:
 "Counsel for both the defendant and the State are allowed wide latitude on drawing reasonable inferences from the evidence in their closing arguments. Both have the right to present their impressions from the evidence, if reasonable, and argue every legitimate inference. Manigan v. State, 402 So.2d 1063 (Ala.Cr.App.), cert. denied, 402 So.2d 1072 (Ala. 1981)."
Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982).
In Orr v. State, 462 So.2d 1013 (Ala.Cr.App. 1984), the prosecutor, in a shoplifting case, was allowed to state that when people shoplift, the effect is that the stores raise their prices and that everyone pays. This court held that such argument was permissible, as lawyers can argue their interpretations of the law and inferences from the evidence.Id. Likewise, in Sanders, we held that statements about small guns and about the President and the Pope being able to testify to their danger were permissible as an appeal to law enforcement. In this case, we hold that the prosecutor committed no error in his statements about people stealing for drugs, as we view such statements as an appeal for law enforcement.
For the reasons set forth, we find that the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 258